**BUCK MATHIS HUFF, Petitioner**

**v.**

**ADELINE PRITCHARD HUFF, Respondent**

High Court of American Samoa
Trial Division

FJ No. 3-89

June 4, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Petitioner, William A. Reardon
For Respondent, John L. Ward II

Petitioner and respondent were divorced in California in 1982. The California judgment provided, inter alia, that respondent "shall be awarded . . . as her sole and separate property . . . a proportionate interest in Petitioner's retirement benefits with Ralston Purina Company."

Respondent has filed this judgment with the High Court of American Samoa in accordance with A.S.C.A. § 43.1701 et seq., the Uniform Enforcement of Foreign Judgments Act, and now requests the Court to "allow execution or further process to issue."

The dispute between the parties concerns retirement benefits which Ralston Purina paid to petitioner between 1984 and 1989, apparently in ignorance of the divorce judgment awarding a portion of these benefits to respondent. The respondent claims that the share of these benefits belonging to her was $20,873.40. Petitioner does not dispute this amount, but argues that respondent is estopped from collecting it because she never notified Ralston Purina of the divorce judgment. Respondent further contends that this Court should decline to enforce the judgment because Ralston Purina is an indispensable party to the proceedings, and also because the California family court retained jurisdiction to enforce the judgment.

Counsel for respondent directs our attention to a recent case in which the California courts were faced with facts quite similar to those of the present case. In *Farner v. Farner*, 90 Daily Journal D.A.R. 45 (Cal. App. 1989), the appellate court held that when retirement benefits adjudicated to be the property of one spouse had been paid to the other spouse and the other spouse had converted such benefits to his own use, the spouse whose property had been thus converted should be treated as a creditor with a money judgment against the other spouse. The judgment debt was therefore properly subject to a writ of execution. The appellate court held, however, that it was within the trial court's discretion to determine whether a writ of execution was appropriate in the circumstances, and remanded to the trial court for such a determination.

Although *Farner* involved domestic rather than foreign execution on a judgment, this distinction does not suggest a different outcome in the present case. The Uniform Enforcement of Foreign Judgments Act was designed to give a foreign judgment creditor the same right to enforce his judgment in this Territory that he would have in the State or Territory in which he obtained the judgment. Petitioner and respondent now both reside in American Samoa; this Court is manifestly the most convenient forum for adjudication of their respective rights under the judgment. Although respondent could undoubtedly move to enforce the judgment in the California court that issued it, nothing about that judgment suggests that the court retained jurisdiction in order to obstruct rather than facilitate enforcement.

Petitioner is, however, entitled to the same process here that he would receive had enforcement been sought in California. Under California law a person against whom an award has been made in a divorce decree is entitled to judicial consideration of his arguments against enforcement. *See Farner, supra*, at 46, and authorities cited therein. Moreover, the judgment in the present case, like that in *Farner*,

> raise[s] a judicial question because the clerk could not, with any certainty, ascertain the amount to be paid either from the order itself or the record as it existed upon entry of the order. The order potentially [is] a candidate for enforcement by execution, but only after review and hearing in the trial court.

*Id.* at 46. *Cf. Parisi v. Parisi*, 10 A.S.R.2d 106, 107-08 (Foreign judgment was enforceable as rendered, but subsequent assignment of judgment was "a private contract which, unlike a judgment, is not entitled to full faith and credit.") We therefore turn to the merits of petitioner's contentions.

We conclude that the California judgment did not allocate the burden of notifying Ralston Purina to either petitioner or respondent. The respondent would obviously have been well advised to do so. The record suggests no explanation for her failure to do so. On the other hand, the petitioner was the one who worked for Ralston Purina; who knew exactly when he was going to retire and thereby make it necessary for someone to notify Ralston Purina about the division of benefits; who presumably did have some dealings with the benefits office immediately prior to his retirement in 1984; and who knew or should have known, once he began receiving benefits, that part of what he was receiving was the property of someone else.

These circumstances may not have imposed on petitioner an affirmative duty to notify Ralston Purina of the divorce decree; but they weigh heavily against petitioner's defense that respondent is now estopped, on account of laches or otherwise, from retrieving her property. In order to sustain such a defense it would be necessary for petitioner to establish his own good faith or "clean hands." In the present case this would require a showing that at all times between 1984 and 1989 he was under the impression Ralston Purina was paying him only his own share of the retirement benefits. No such showing has been attempted, and the record suggests it could not be made.

85

In any case, such a showing would probably prove only that it would be inequitable to force petitioner to pay the whole $20,000 to its rightful owner all at once, not that he should be allowed to evade payment altogether. As it happens, similar relief is available under A.S.C.A. § 43.1501 et seq., the Orders in Aid of Judgment statute, even without a showing of clean hands.

We do not believe that Ralston Purina is an indispensable party to this action. Indeed, we are not even sure it is a proper party, since it was not a party to the proceeding in which the foreign judgment was rendered. *See Parisi, supra.* Assuming that joinder were possible and that respondent were to prove that Ralston Purina owed her part of the money it sent to petitioner between 1984 and 1989, however, Ralston would appear entitled to indemnity from the petitioner himself. "As between the two parties who violated the order, the party who received and spent the money must indemnify the party who merely released it." *Bank of Hawaii v. Congregational Christian Church*, 9 A.S.R.2d 100, 104 (1988).

Accordingly, a writ of execution shall issue against the petitioner in the amount of $20,873.40. This order is without prejudice to the right of respondent to petition the Court for a further writ of execution for an amount equal to interest at the legal rate on the various amounts belonging to her which were received by petitioner. It is also without prejudice to the right of petitioner to petition the Court for an Order in Aid of Judgment. (We urge the parties to agree on a schedule of payments so as to render such further proceedings unnecessary.)

It is so ordered.